**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 93-5866

DERRICK A. CURRY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William N. Nickerson, District Judge.
(CR-90-454-WN)

Argued: October 28, 1996

Decided: December 5, 1996

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Charles Bonsib, MARCUS & BONSIB, Green-
belt, Maryland, for Appellant. John Vincent Geise, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:**
Lynne A. Battaglia, United States Attorney, Barbara S. Skalla, Assis-
tant United States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Derrick Curry was convicted of possession, distribution, and conspiracy to distribute crack cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. Curry appeals arguing that he was unduly prejudiced by the expert testimony of a law enforcement officer and the "willful blindness" instruction given to the jury. Additionally, Curry argues that his conviction should be vacated because his trial was not timely under the Speedy Trial Act. Lastly, Curry contends that we should remand his case for resentencing because the district court incorrectly concluded that it had no legal authority to grant a downward departure based on a "combination of factors" theory. We find no merit in Curry's various contentions, and we affirm the judgment of the district court.

I.

In the fall of 1988, federal agents began an operation aimed at prosecuting a crack distribution network active in Northeast Washington, D.C. This investigation led to the arrest and indictment of Derrick Curry and over twenty other defendants.

The evidence showed that Curry was deeply involved in the drug distribution conspiracy. On two occasions in July 1990, he was videotaped exchanging crack cocaine for cellular phones with FBI Special Agent Eric Bryant. Surveillance of Curry and his co-conspirators also revealed that he was involved in a plan to deliver a large quantity of crack cocaine on October 17, 1990. Furthermore, Curry's co-conspirators testified that they had seen Curry make crack deliveries on several occasions. In addition to this significant body of evidence, the prosecution introduced transcripts of several Title III wire intercepts between Curry and other members of the conspiracy which corroborated the testimony against him.

2

At a September 5, 1991 hearing, Curry was granted his motion for severance from the trial of all but four of those who had been indicted. On March 20, 1992, another severance separated Curry and Tyrone Hughley from the rest of the co-defendants. On June 1, 1992, Curry's trial commenced. Hughley entered a guilty plea during the trial. On June 10, 1992, the jury found Curry guilty of conspiracy to distribute crack cocaine, distributing crack cocaine, and possession of crack with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. On October 1, 1993, Curry was sentenced to 235 months of imprisonment. He then filed the instant appeal.

II.

Curry maintains that the district court erred in refusing to dismiss his indictment because his trial was not timely under the Speedy Trial Act, 18 U.S.C. § 3161, et seq. The parties agree that as of December 3, 1991, only five days had gone off the Speedy Trial Act clock. Curry, however, disputes the district court's Speedy Trial calculations after that date.

He first challenges the court's determination that a co-defendant's motion to dismiss stopped the Speedy Trail clock until a hearing was held on that motion. On September 23, 1991, Michael Smith, a defendant then in Curry's trial group, filed a motion to dismiss three of the charges against him. This motion was not resolved in a November 1, 1991 motions hearing, but the district court had also scheduled a pretrial conference on all pending motions for January 17, 1992 which was eventually rescheduled for March 20, 1992. Curry contends that the court never acted on Smith's motion, and the motion, therefore, excluded at most only thirty days from the Speedy Trial clock pursuant to 18 U.S.C. § 3161(h)(1)(J).

We disagree. Smith's motion was indeed one of the subjects of the March 20 hearing. In a March 16, 1992 letter to the district judge, the government clearly stated its understanding that Smith's motion would be covered during the hearing. Indeed, the subject was discussed in the hearing, and the government voluntarily dropped two of the counts against Smith. Additionally, Smith's counsel appeared at the hearing and argued that two other counts should have been

3

dropped as well. The district court also believed that the purpose of the March 20 hearing was to address Smith's motion and said as much in denying Curry's Speedy Trial motion below, stating, "I am confident that the hearing that was held was scheduled to resolve open motions, including the Smith motion that has been referred to, and that the motion of Michael Smith does add excludable time which kept this case on track." We have found nothing in the record which refutes the trial court's conclusion.

Curry also suggests that Smith's motion should not have excluded time from the Speedy Trial clock because it was"frivolous." However, the provision which excludes the time through the hearing on the Smith motion, 18 U.S.C. § 3161(h)(1)(F), contains no reasonableness requirement. As the Supreme Court has indicated, this was a deliberate decision by Congress. See Henderson v. United States, 476 U.S. 321, 326-27 (1986). The decision reflects Congress' refusal to confuse further "an already complicated area of the law by requiring a district court to assess the merits of a motion before it determines that an exclusion of time will be permitted." United States v. Springer, 51 F.3d 861, 865 (9th Cir. 1995).

Speedy Trial time exclusions as to one defendant govern all defendants until they are severed. 18 U.S.C. § 3161(h)(7). Since the time between the filing of a pre-trial motion and the conclusion of the hearing on that motion is excludable from the Speedy Trial clock under section 3161(h)(1)(F), see Henderson, 476 U.S. at 330, no Speedy Trial days accumulated as to Curry's trial between December 3, 1991 and March 20, 1992.

Curry further disputes the amount of Speedy Trial time that passed after March 20. Curry maintains that a motion in limine filed by the government on May 4, 1992 should not have operated to exclude the period of time between the filing of that motion and the resolution of the motion during Curry's trial which commenced on June 1, 1992.

When the largest group of defendants was tried, the jury returned acquittals on some of the counts on April 10, 1992. After that verdict, Michael Smith, whose trial was still pending and had been severed from Curry's by that point, requested that the district court take "judicial notice" of the April 10th acquittals. The government, concerned

4

that a similar motion might be made by one of the defendants still in Curry's group, filed a motion in limine on May 4, 1992 to preclude reference in Curry's trial to the April 10th acquittals. The court addressed this motion on the second day of Curry's trial, granting the government's requested relief.

This circuit has recognized that pretrial motions which exclude time under the Speedy Trial Act include all motions"capable of determination without the trial of the general issue." United States v. Riley, 991 F.2d 120, 123 (4th Cir. 1993) (citation omitted). The government's motion in limine certainly falls within this category. The fact that the motion was not decided until the trial began does not affect the Speedy Trial time calculation. This circuit has held that "when the Speedy Trial Act refers at 18 U.S.C. § 3161(h)(1)(F) to a `pretrial motion,' the reference includes a motion to suppress whether or not deferred" until trial. Id. at 124.

Curry's further argument that the government filed the motion as a pretext to stop the Speedy Trial clock is meritless. The developments in the trials of the other defendants understandably led the government to want to resolve the potential problem of the defense mentioning the April 10th acquittals in Curry's trial. The government's motion in limine was thus appropriate, and the district court properly excluded the time between the filing of the government's in limine motion and the beginning of Curry's trial pursuant to 18 U.S.C. § 3161(h)(1)(F).

Only fifty days of non-excludable Speedy Trial time passed before the commencement of Curry's trial on June 1, 1992-- the five days prior to December 3, 1991 and the forty-five days that passed between the March 20, 1992 hearing and May 4, 1992, the day the government filed its in limine motion. This was well within the seventy day limit of the Act. 18 U.S.C. § 3161(c)(1).

III.

Curry also argues his sentence should be overturned because of errors that occurred during his trial. We discuss his claims in turn.

5

A.

Curry contends that he was unfairly prejudiced by the expert testimony of Special Agent J. Andrew McColl. Agent McColl's testimony concerned transcripts of intercepted telephone conversations between Curry and his co-conspirators during the course of an attempted cocaine delivery on October 17, 1990. Agent McColl helped explain the conversations to the jury using his knowledge of the methods, operation, and jargon of drug traffickers. Curry concedes that expert testimony of this type is proper but argues that McColl exceeded proper bounds by giving his opinion as to the meaning of common terms and other phrases which did not require any special interpretation. This improper testimony, Curry argues, prejudiced him because it allowed the government to put McColl's "stamp of approval" on its case.

On the contrary, we find that Agent McColl's testimony was either within proper bounds or did not unfairly prejudice Curry. "We have repeatedly upheld the admission of law enforcement officers' expert opinion testimony in drug trafficking cases." United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994) (citation omitted). This sort of testimony is useful to jurors because they are often unfamiliar with the behavior and special jargon of drug dealers. For example, in one instance Agent McColl testified that the number 23 appended to the end of a page received by one of Curry's co-conspirators was a code identifying the sender. This is precisely the sort of information that a juror might not know without the help of an expert.

Curry's arguments go to the weight of McColl's testimony, not its admissibility. He merely disagrees with some of McColl's interpretations. Curry, however, had a full opportunity to cross-examine McColl and to provide his own explanations of the damaging conversations during his defense. The jury simply weighed the evidence and found McColl's testimony credible.

B.

Curry further maintains that he was prejudiced because the district court gave the jury a "willful blindness" instruction. In this case, there was strong evidence of Curry's actual knowledge, including taped

conversations and videotapes of Curry engaging in drug transactions. Given this evidence, a willful blindness instruction would at worst have been surplusage and would not have created any risk of prejudice. See United States v. Boutte, 13 F.3d 855, 859 (5th Cir. 1994). Furthermore, we find no impropriety in the form of the district court's instruction. The district court clearly stated that for the jury to infer knowledge they would have to find that Curry had "deliberately closed his eyes." Nowhere do the district court's instructions begin to suggest that negligence or mistake would be sufficient. Indeed, the district court's instructions were identical in all essential respects to those we approved in United States v. Mancuso , 42 F.3d 836, 846 (4th Cir. 1994).

In sum, we find Curry's contentions of trial error to be without merit. We therefore affirm his convictions.

IV.

Curry contends that we should remand this case to the district court for resentencing because the court mistakenly concluded it was powerless to grant Curry a sentencing departure under the law. At his sentencing hearing, Curry presented several factors which he argued took his case outside of the "heartland" of the appropriate sentencing guideline. Among the factors presented were reports from experts on Curry's psychological makeup, evidence of post-offense rehabilitation, his family situation, and the argument that he was a "minor player" in the drug distribution scheme. Curry does not argue that any one of these factors would be sufficient to support a downward departure but rather that the judge should have looked at these factors in combination to determine whether his case warranted a downward departure. In response to Curry's argument the district court stated:

> I don't have any difficulty . . . in terms of concluding that there simply isn't any legal basis that would support my concluding that it amounts up to a consideration that the Sentencing Commission should have taken into consideration. Regretfully I have to conclude that there simply are no factors either that would warrant legally speaking, or factually under the law my departing from the guidelines.

7

Curry contends that the district court's response indicates that the court believed it had no legal authority to consider his claim. We disagree with Curry's interpretation. In this case, the individual factors that Curry argues should have supported a downward departure when considered in combination are either plainly improper or factors that had already been considered by the district court. The district court's statement does not reflect a belief that it had no authority to grant a downward departure. On the contrary, the statement reflects the district court's proper conclusion that Curry's attempt to aggregate impermissible and already considered factors was both factually and legally insufficient to support a downward departure on a basis unmentioned in the Guidelines. We thus affirm Curry's sentence.

V.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

8