**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1735

_____

UNITED STATES OF AMERICA

v.

ANTONIO BISHOP,

Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 3:21-cr-00383-001)
District Judge:  Honorable Robert D. Mariani

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on March 7, 2025

Before:  MATEY, FREEMAN and ROTH, Circuit Judges

(Opinion filed November 20, 2025)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Antonio Bishop was convicted of both attempting to provide contraband to a federal inmate and attempting to obtain contraband by a federal inmate. On appeal, he argues that the District Court committed reversible error by not granting a mistrial when the prosecution introduced evidence implying that he must have, on a prior occasion, introduced drugs into the prison or threatened a federal official. However, we do not need to decide whether its admission was erroneous. Any error was harmless due to the overwhelming evidence of Bishop's guilt and his trial counsel's concessions in closing argument. We also find no merit in his challenges to his procedurally and substantively reasonable sentence. We will therefore affirm his judgments of conviction and sentence.

**I.**

In December 2020, Bishop was indicted on one count of attempting to provide contraband (suboxone) to a federal inmate (Count One),[1] and one count of attempting, as a federal inmate, to obtain contraband (tobacco) (Count Two).[2] The indictment alleged that, in December 2019, Bishop was imprisoned at United States Penitentiary (USP) Canaan when he communicated via email and phone with multiple people outside the prison for the purpose of introducing controlled substances and other prohibited objects into the prison for distribution. At trial, the prosecution presented evidence that, on

---

[1] *See* 18 U.S.C. § 1791(a)(1) ("Whoever . . . in violation of a statute or a rule or order issued under a statute, provides to an inmate of a prison a prohibited object, or attempts to do so . . . shall be punished . . . .").
[2] *See* 18 U.S.C. § 1791(a)(2) ("Whoever . . . being an inmate of a prison, . . . attempts to make or obtain, a prohibited object . . . shall be punished . . . .").

January 13, 2020, USP Canaan Corrections Officer Steve Potter retrieved a package at the prison's warehouse facility where packages containing the property of newly transferred inmates are received and processed. The package was addressed to Louis Pitts, a USP Canaan inmate who, like Bishop, was assigned to the Residential Drug Addiction Program (RDAP) unit. The package purportedly came from USP Atlanta in Georgia, and it contained a carbon-copy property sheet for an interfacility inmate transfer. Potter found the package suspicious, and turned it over to Mark Turner, then a Special Investigative Services Technician. Turner searched it and found twenty-two (22) bags of tobacco inside a container of ramen noodles and 194 strips of suboxone inside boxes of Little Debbie treats.[3] He later confirmed that Pitts had not been sent a package from USP Atlanta.

On January 15, 2020, after the discovery of the contraband, Bishop asked to speak with correctional officers. During an unrecorded interview, he admitted that he had "mastermind[ed]" an effort to smuggle the tobacco and suboxone into the prison because he had wanted to buy his son a car.[4] Five days later, during a second unrecorded interview, he elaborated on the details of the scheme.

At trial, on cross-examination, defense counsel asked Turner a series of questions challenging his familiarity with Bishop's voice. Turner had testified earlier that he began monitoring Bishop's calls after speaking with a confidential informant. Turner replied

---

[3] A forensic scientist with the Pennsylvania State Police later tested the suboxone strips and determined that they were in fact suboxone, a narcotic drug.
[4] A290-91.

that he was familiar with Bishop's voice because they spoke once or twice per week while standing in the chow line at the prison. When asked what they talked about, Turner responded, "[H]e was on the Required Monitoring System, so he would ask about that, and his emails and stuff like that, just business."[5]

On redirect examination, the prosecutor asked Turner, "What is the Required Monitoring Program?"[6] Turner answered:

> Required Monitoring is a program that the Bureau of Prisons has. There's multiple reasons why you get placed on Required Monitoring. *If you have introduced drugs at a previous facility, if you threaten Federal officials, there's a plethora of reasons that places you on Required Monitoring.*[7]

Defense counsel immediately objected and moved for a mistrial on the grounds that the evidence was inadmissible other-act evidence under Rule 404(b), and that the prosecutor had not provided the required notice. The prosecutor responded that her question was not objectionable, and that she did not intend to elicit the reason for Bishop's placement in the Required Monitoring Program. The District Court overruled defense counsel's objection and denied his motion, reasoning that his cross-examination had prompted the prosecutor's generic question, and that there was no Rule 404(b) issue because the prosecutor did not intend on "get[ting] into the reasons why [Bishop] was in the Required Monitoring Program."[8]

The defense rested without introducing any evidence. In closing argument,

---

[5] A311.
[6] A337.
[7] A337 (emphasis added).
[8] A339.

defense counsel conceded that Bishop was an "inmate of the prison,"[9] that he was guilty of Count Two, and that the prosecution had proven the second and third elements of Count One. Counsel argued that the prosecution had not proven the first element of Count One (that "Bishop knowingly attempted to provide [contraband] to an inmate in prison")[10] on the grounds that § 1791(a)(1) applies only to non-inmates who provide contraband. The jury found Bishop guilty of both crimes, and the District Court later denied his motions for judgment of acquittal and a new trial. He was sentenced to 168 months in prison, the bottom of the Guidelines range.

## II.[11]

Bishop argues that the District Court committed reversible error by denying his motion for a mistrial and admitting evidence, through Turner's testimony on redirect examination, that Bishop had either smuggled drugs into prison or threatened a federal official. He contends that this evidence was subject to Rule 404(b), that the prosecution failed to comply with Rule 404(b)(3)'s notice requirement, and that the admission of this evidence was improper.

We review a district court's evidentiary ruling and its denial of a mistrial motion for abuse of discretion.[12] We review de novo whether, as a matter of law, Rule 404(b) applies to the challenged evidence. Rule 404(b) precludes the use of "[e]vidence of any

---

[9] A403.

[10] A425.

[11] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

[12] *See United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003) (mistrial motion); *United States v. Davis*, 183 F.3d 231, 255 (3d Cir. 1999) (evidentiary ruling).

other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[13]  If such evidence is offered against a criminal defendant for a proper purpose, Rule 404(b)(3) requires reasonable notice.[14]

We agree with the District Court that the prosecutor's question eliciting the challenged evidence was not objectionable on its face.  Defense counsel opened the door on cross-examination to background information regarding the monitoring program by implying that Turner was unfamiliar with Bishop's voice.  Rule 404(b)'s coverage, however, includes any evidence from which the jury may reasonably infer that the defendant committed some prior bad act.[15]  With that principle in mind, we conclude that Rule 404(b) applies to the portion of Turner's answer that necessarily implied Bishop "ha[d] introduced drugs at a previous facility," had "threaten[ed] Federal officials," or had committed some other bad act that resulted in his placement in the Required Monitoring Program.[16]

The government contends that the evidence does not fall within Rule 404(b) because defense counsel opened the door.  We disagree:  "[T]he Rules of Evidence do not

_____

[13] Fed. R. Evid. 404(b)(1).
[14] Fed. R. Evid. 404(b)(3).
[15] *See, e.g.*, *United States v. Shavers*, 693 F.3d 363, 392 (3d Cir. 2012) (reviewing evidence of investigation into prior robbery committed by another person under Rule 404(b), even though "there was no proof that the [defendants] had committed the [prior] robbery," because the jury might have "inferr[ed] that the [defendants] were involved in the [prior] robbery due to their association with [that other person]"), *vacated in part on other grounds*, 570 U.S. 913 (2013).
[16] A337.

simply evaporate when one party opens the door on an issue."[17] Nevertheless, we need not decide whether a Rule 404(b) violation occurred in Bishop's case, because we conclude that any error was harmless.[18] A nonconstitutional "evidentiary error is harmless if 'it is highly probable that the error did not contribute to the judgment,' which 'requires that the court possess a sure conviction that the error did not prejudice the defendant.'"[19] We must determine whether that error affected the result of the trial.[20]

Assuming, without deciding, that an error occurred in Bishop's case, we conclude that it was "harmless 'given the truly overwhelming quantity of legitimate evidence' against him."[21] Moreover, when viewed in light of that overwhelming evidence, defense counsel's concessions essentially compelled the jury to find Bishop guilty on both counts. Those concessions left the jurors with only one question to decide: Whether Bishop had knowingly attempted to provide contraband to an inmate in prison.[22] Based on the record before us, we are satisfied that, even if the District Court did commit an evidentiary error, it did not contribute to the jury's verdict.[23]

---

[17] *Houlihan v. City of Chicago*, 871 F.3d 540, 553 (7th Cir. 2017) (quoting *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th Cir. 2011)).
[18] *See United States v. Valentin*, 118 F.4th 579, 584 n.6 (3d Cir. 2024) (noting that our Court will not disturb a defendant's conviction based on a harmless evidentiary error).
[19] *United States v. Shaw*, 891 F.3d 441, 453 (3d Cir. 2018) (quoting *United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016)).
[20] *See United States v. Boyd*, 999 F.3d 171, 183 (3d Cir. 2021).
[21] *See Shaw*, 891 F.3d at 453 (quoting *United States v. Christie*, 624 F.3d 558, 571 (3d Cir. 2010)).
[22] Bishop has not challenged the adequacy of those instructions on appeal, and his trial counsel "conceded that there was no case law supporting his interpretation of 18 U.S.C. § 1791(a)(1)." A24 n.3.
[23] The District Court did not issue a curative instruction, but that "was not reversible error because there is no indication in the record that defense counsel requested one." *See*

7

For similar reasons, we will not disturb the District Court's denial of Bishop's mistrial motion. When the denial of a motion for mistrial is based on a witness's improper remarks, "[w]e consider: (1) whether the remarks were pronounced and persistent, (2) the strength of the other evidence, and (3) curative actions taken by the district court."[24] Here, the prosecution's other evidence was overwhelming, whereas the other-crime evidence was limited to a single remark. After that isolated remark, the District Court limited the scope of the prosecutor's redirect examination to ensure that the prosecutor did not "get into the reasons why [Bishop] was in the Required Monitoring Program or anything of that nature[.]"[25] Moreover, given the overwhelming evidence of Bishop's guilt, we are certain that, any error in the denial of the mistrial motion would be harmless.[26]

## III.

Turning to Bishop's sentencing challenges. We review a district court's sentencing determinations for abuse of discretion.[27] Factual findings are clearly erroneous if they are "unsupported by substantial evidence, lack adequate evidentiary

---

*Shavers*, 693 F.3d at 392 (citing *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 526 (3d Cir. 2003)).

[24] *Bailey*, 840 F.3d at 131.

[25] A339.

[26] *See United States v. Dunbar*, 767 F.2d 72, 76 (3d Cir. 1985) ("[T]he court's failure to declare a mistrial constituted harmless error beyond a reasonable doubt since the evidence against [the defendant] was overwhelming."); *see also United States v. Urqhart*, 469 F.3d 745, 749 (8th Cir. 2006) ("[W]here there is 'substantial evidence of appellant's guilt, any error in the failure to declare a mistrial was harmless.'" (quoting *United States v. Urick*, 431 F.3d 300, 305 (8th Cir. 2005))).

[27] *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc) (citations omitted).

support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence."[28]

Bishop first challenges the factual findings underlying the District Court's application of the four-level sentencing enhancement in U.S.S.G. § 3B1.1(a) for organizing a crime involving at least five "participants." The Guidelines provide for a four-level increase to a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."[29] Participants include those who "were (i) aware of the criminal objective, and (ii) knowingly offered their assistance."[30]

Bishop concedes that the evidence shows four participants (himself, his brother, Smith, and Pitts), but he contends that the District Court clearly erred in finding a fifth (Hemphill) based merely on Bishop's use of Hemphill's email account and Bishop's statements that he had planned to use Hemphill in the scheme. However, the evidence also shows that Bishop had communicated Hemphill's information to at least one of Bishop's associates on the outside before his recorded call with Smith. Bishop also admitted that he had stopped using Hemphill's account only because Hemphill was no longer in the RDAP program. While we recognize the circumstantial nature of this evidence, we find no clear error in the District Court's decision.

---

[28] *United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002).
[29] U.S.S.G. § 3B1.1(a).
[30] *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002); *accord United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994) (holding that a person "need only have participated knowingly in some part of the criminal enterprise" to qualify as a "participant").

Bishop next argues that the District Court erred in denying him a two-level offense level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. He claims a reduction was warranted because he fully confessed to the authorities prior to learning he was under investigation and argued only statutory interpretation as a defense at trial. However, to receive a reduction, Bishop had to show by a preponderance of the evidence that he "clearly . . . accept[ed] . . . responsibility for his offense."[31] His decision to go to trial was not a per se bar to a reduction, but "a reduction is generally not meant to apply to a defendant who puts the government to its burden of proof at trial."[32] Bishop retracted his confession and specifically asserted his actual innocence before jury selection. His counsel then attacked Turner's credibility on cross-examination to imply that he had lied about Bishop's participation in the crime. At sentencing, Bishop blamed his trial counsel for his conviction, denying that he had ever used Pitts' email account, and renewing accusations against correctional officers whom he claimed had lied and threatened him. We see no clear error in the District Court's decision.[33]

Finally, we reject Bishop's argument that his bottom-of-the-Guidelines sentence is substantively unreasonable. We will not reverse "a court's procedurally sound sentence unless no reasonable sentencing court would have imposed the same sentence on that

---

[31] *See* U.S.S.G. § 3E1.1(a); *see also United States v. Boone*, 279 F.3d 163, 193 (3d Cir. 2003) (explaining that defendant "bears the burden of establishing . . . that he or she is entitled to the reduction").

[32] *See United States v. DeLeon-Rodriguez*, 70 F.3d 764, 767 (3d Cir. 1995).

[33] *See DeLeon-Rodriguez*, 70 F.3d at 767 (explaining that "the determination of the sentencing judge is entitled to great deference on review" because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility" (internal quotation omitted)).

particular defendant for the reasons the district court provided."[34]  As noted above, the District Court did not err in finding that Bishop had failed to accept responsibility.  Nor, given Bishop's lack of remorse, did the court clearly err in finding that his mitigation evidence failed to justify a downward variance.[35]  He argues that his sentence is excessive compared to other prison-contraband cases, but he has not "identifie[d] other defendants whose circumstances mirrored his own."[36]  Moreover, the perceived excessiveness in Bishop's sentencing range results primarily from applicable sentencing enhancements and, as the District Court explained, his placement in the highest possible criminal history category.  In short, Bishop has failed to carry his "heavy burden to show that a sentence within the applicable Guidelines range was substantively unreasonable."[37]  We see no abuse of discretion in the District Court's decision.

**IV.**

For the reasons set forth above, we will affirm Bishop's judgments of conviction and sentence.

---

[34] *United States v. Siddons*, 660 F.3d 699, 708 (3d Cir. 2011) (internal quotation omitted).
[35] *See United States v. Seibert*, 971 F.3d 396, 402 (3d Cir. 2020) (reaffirming that "'a district court's failure to give mitigating factors the weight a defendant contends they deserve' does not make a sentence substantively unreasonable" (quoting *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007))); *see also United States v. Pawlowski*, 27 F.4th 897, 912 n.8 (3d Cir. 2022) (recognizing that "sentencing courts routinely consider a defendant's lack of remorse").
[36] *See United States v. Clay*, 128 F.4th 163, 185 (3d Cir. 2025).
[37] *See Seibert*, 971 F.3d at 402 (cleaned up).