**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Purvis Ray CARTWRIGHT and Purvis Jerome Patrick, Defendants–Appellants.**

No. 92–2637.

United States Court of Appeals,
Fifth Circuit.

Oct. 25, 1993.

Roland Brice Moore, III, Houston, TX (court-appointed), for Cartwright.

Jerry Wernard Williams, Houston, TX (court-appointed), for Patrick.

B. Janice Ellington, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for the U.S.

Before GARWOOD, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Purvis Cartwright and his son, Purvis Patrick, appeal their convictions involving cocaine. Finding no error, we affirm.

I.

In October 1991, undercover narcotics investigator Walter Redman met Patrick and agreed to pay Patrick $35,000, which was to cover the price per kilogram of $16,000, plus an additional $3,000 to "cook" the powdered cocaine into "crack." Through October 10, the two communicated several times by telephone with the aid of digital pagers; on October 10 and 11, they spoke several times to set up a sale on October 11.

Patrick told Redman that he would meet him at a Houston restaurant at around 9:00 p.m. Redman, accompanied by a surveillance team, proceeded there with his partner in an unmarked car and waited inside. When Patrick arrived, he made eye contact with Redman's partner, who motioned him into the restaurant. Patrick entered the restaurant, contacted Redman, and told him that he was ready to complete the transaction. Redman followed Patrick to the rear of Patrick's jeep.

Cartwright was sitting in the jeep passenger seat. They spoke, then Cartwright began to exit the jeep. Cartwright invited Redman into it, telling him that everything was "okay." Cartwright picked up a white plastic trash-type bag from the seat between his legs, placed it on the floorboard area around his feet, and then left, walking toward the restaurant.

Redman entered the jeep. He and Patrick agreed to conduct the transaction away from the parking lot and down the service road. Redman verified that the plastic bag contained what appeared to be chunks of "crack" cocaine. Redman left the jeep, ostensibly to retrieve the money from his car. He signaled to the raid team to execute arrests, then walked to the driver's side of Patrick's car, reached in, and extinguished the ignition. Patrick was arrested by members of the raid team. Cartwright, still inside the restaurant, was arrested a short while later.

The white plastic bag was recovered. It contained approximately 1551 grams of a mixture containing eighty-eight percent pure cocaine base.

After being given *Miranda* warnings, Cartwright made repeated statements to

United States Customs Special Agent Peter Jackson that he owned the drugs and Patrick had no part in the crime. Cartwright also told Jackson, "It's my dope, I cooked it, just leave my kid out of it, you know, I was trying to help him make some money; he came to me to make some money, I was trying to help him make some money." Cartwright later told Drug Enforcement Administration Special Agent Dean Robert that he had shorted Redman six ounces in an attempt to make a little money on the side. Cartwright signed a consent to search a structure that he represented to be his house in Houston, but the missing six ounces were never found.

## II.

A jury found both defendants guilty of conspiracy to possess with intent to distribute more than fifty grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846 (count 1) and aiding and abetting the possession with intent to distribute more than fifty grams of a mixture of substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (count 2). Neither defendant presented evidence or testimony at trial. The district court ordered Cartwright to serve 293 months in prison, followed by a five-year term of supervised release and a $100 special assessment; the court ordered Patrick to serve 262 months in prison with a five-year term of supervised release and a $100 special assessment.

## III.

### A.

■ Both defendants first raise the claim that the evidence was insufficient to sustain a conviction for conspiracy with intent to distribute more than fifty grams of a mixture or substance containing cocaine base and aiding and abetting the possession with intent to distribute more than fifty grams of a mixture of substance containing cocaine base. We review the evidence in a light most favorable to the verdict and reverse only if a rational trier of fact could not have found the essential elements beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying that standard here, we conclude that there is sufficient evidence to sustain the convictions.

■ To convict of possession with intent to distribute, the government must prove (1) possession of the illegal substance, (2) knowledge, and (3) the requisite intent to distribute. *United States v. Garza,* 990 F.2d 171, 174 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 332, 126 L.Ed.2d 278 (1993) (No. 93–5857). To prove conspiracy to distribute, the government must prove (1) an agreement with intent to distribute existed, (2) the defendant had knowledge of the agreement, and (3) the defendant voluntarily participated in the conspiracy. *United States v. Lewis,* 902 F.2d 1176 (5th Cir.1990).

■ The evidence supports the conviction for the underlying offense of possession with intent to distribute. Cartwright admitted that the drugs were his, satisfying the possession and knowledge prongs of the test. His intent to distribute may be inferred from his actions at the scene as well as from the large quantity of drugs involved. *United States v. Pineda–Ortuno,* 952 F.2d 98, 102 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992). Patrick arranged the cocaine sale and actually attempted to sell it to Redman, thus satisfying all three prongs of the test.

■ The evidence also supports convictions for conspiracy to commit the underlying substantive offense. Cartwright confessed that he cooked the drugs to help his son make some money; Patrick set up the sale with Redman. Combined, Cartwright's statements and Patrick's actions establish sufficient proof that an agreement existed. The fact that both defendants arrived at the restaurant with $35,000 worth of cocaine demonstrates that they were working together. *See United States v. Pruneda–Gonzalez,* 953 F.2d 190, 196–97 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992) (conspirators would not have brought along an innocent party to perform vital parts of the crime). Showing up with the cocaine also was an action in furtherance of the conspiracy.

## B.

■ Cartwright also challenges the sufficiency of the evidence supporting his conviction for aiding and abetting possession with intent to distribute. To convict on this charge, the government must show that Cartwright (1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed. *United States v. Murray*, 988 F.2d 518, 522 (5th Cir.1993). Cartwright held the drugs on his lap while Patrick was in the restaurant and then told Redman to get into the jeep to complete the sale, mentioning to him that everything was "okay." Moreover, Cartwright admitted that the drugs were his, that he had cooked them, and that he was trying to help his son make some money. The record, therefore, sufficiently supports the jury's verdict of guilty on this count.

## IV.

■ Patrick argues that admitting Cartwright's confession in their joint trial violated his rights under the Confrontation Clause. U.S. CONST. AMEND. VI. Patrick did not move for severance or file a pretrial motion for suppression of the confession. Patrick did not object when the confession was admitted, nor did he move for severance or mistrial at that time. We therefore review the admission of this evidence only for plain error. *United States v. Beaumont*, 972 F.2d 91, 95 (5th Cir.1992). "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

The leading case regarding admission of a co-defendant's confession is *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There, the Court held that in a joint trial, an accused's right to confrontation is violated if one defendant's extrajudicial statement is used to implicate another defendant in the crime and the confessor does not take the stand, and thus is not subject to cross-examination. *Beaumont*, 972 F.2d at 95.

The admission of Cartwright's confession did not violate *Bruton*, for a number of reasons. First, "[t]his Court has held consistently that the *Bruton* rule is not violated unless a co-defendant's statement directly alludes to the complaining defendant.... This is true, even if the evidence makes it apparent that the defendant was implicated by some indirect reference." *United States v. Espinoza–Seanez*, 862 F.2d 526, 534 (5th Cir.1988). Cartwright's statement implicates Patrick only by "indirect reference" to other testimony, not by name.

■ Second, the statement asserts that Patrick was not involved, thus attempting to exculpate, not implicate him. Where this is the case, no plain error results. *See United States v. Miller*, 666 F.2d 991, 998 (5th Cir.), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2043, 2044, 72 L.Ed.2d 489 (1982) (no plain error where jury could have construed testimony favorably to defendant).

Third, no plain error resulted, because even without Cartwright's confession, the evidence of Patrick's guilt was overwhelming. He arranged the sale, was a major participant on the scene of the sale, and possessed 1.5 kilograms of cocaine. *See Beaumont*, 972 F.2d at 95, 96 (error may be harmless if the statement's impact is insignificant compared with other incriminating evidence).

## V.

■ Cartwright claims that the district court erred by charging the jury on deliberate ignorance and criminal agency. The standard of review of a defendant's claim that a jury instruction was inappropriate is "whether the court's charge, as a whole, is a correct statement of the law *and* whether it clearly instructs jurors as to the principles of law *applicable to the factual issues confronting them*." *United States v. Lara–Velasquez*, 919 F.2d 946, 950 (5th Cir.1990) (citations omitted). The charge must be both legally accurate and factually supportable; the court "may not instruct the jury on a charge that is not supported by evidence." *United States v. Ortega*, 859 F.2d 327, 330 (5th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989). In

deciding whether the evidence sufficiently supports the charge, the court should examine the evidence and all reasonable inferences therefrom in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

### A.

The court gave the jury a "deliberate ignorance" instruction regarding Cartwright. To return a guilty verdict, the jury was required to find that Cartwright acted "knowingly and willfully." The court properly instructed the jury on the definitions of "knowingly" and "willingly" but added that "[a] defendant still can be found to have acted knowingly and willfully if he closed his eyes on purpose to avoid learning all the facts or law." Cartwright timely objected to this instruction.

■ "A deliberate ignorance instruction allows the jury to convict without finding that the defendant was aware of the existence of illegal conduct." *United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1291, 122 L.Ed.2d 683 (1993). Where the *mens rea* required for conviction is that the defendant act "knowingly" or "willfully," a deliberate ignorance instruction creates a risk that the jury might convict for negligence or stupidity, *Lara–Velasquez*, 919 F.2d at 951, i.e., that the defendant should have been aware of the illegal conduct, *Ojebode*, 957 F.2d at 1229.

■ Because the deliberate ignorance instruction may confuse the jury, "the instruction should rarely be given." *Id.* Indeed, the instruction is "properly given only when [the] defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *Lara–Velasquez*, 919 F.2d at 951 (quoting *United States v. Pacific Hide & Fur Depot*, 768 F.2d 1096, 1098 (9th Cir.1985)).

■ Cartwright never claimed a lack of guilty knowledge; he did not even testify. The government agrees that there was no

evidence of deliberate ignorance.[1] Therefore, it was error for the district court to instruct the jury on deliberate ignorance.

■ Nevertheless, the error was harmless. Where there is no evidence of conscious ignorance, the jury will not attribute negligence to the defendant. The instruction is "surplusage" and thus does "not create the risk of prejudice." *United States v. Samuel*, No. 92–2179, slip op. at 10–11 [980 F.2d 1443 (Table) ] (5th Cir.1992) (unpublished); *accord United States v. Rivera*, 944 F.2d 1563, 1572 (11th Cir.1991). As with the jury in *Samuel*, Cartwright's jury could not have attributed negligence to him, as there was no evidence from which the jury could conclude that Cartwright was negligent in failing to examine the contents of the plastic bag or that he closed his eyes on purpose.

■ Error in giving the deliberate ignorance instruction is also harmless where there is substantial evidence of actual knowledge. *United States v. Breque*, 964 F.2d 381, 388 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). The evidence of Cartwright's guilt is overwhelming; indeed, he confessed. Thus, the court's error in giving the deliberate ignorance instruction was harmless.

### B.

■ Cartwright also argues that the district court erred by instructing the jury on criminal agency. He claims that there was no evidence to show that he had used Patrick as his agent.

This claim is meritless. Cartwright admitted that he cooked the cocaine to help his son make some money. He also held the drugs in the car. Patrick made all the arrangements for the sale, and both parties came to participate in the transaction. This mass of evidence was sufficient to support the instruction that Patrick and Cartwright were acting as agents of one another. The district court did not abuse its discretion by including a criminal agency instruction.

---

1. The government admits that despite the lack of evidence for a deliberate ignorance instruction, the government proposed that it be given. The government's proffered explanation that the instruction was printed in brackets, as it appears in the Fifth Circuit's Model Jury Instructions, does not excuse it for suggesting the charge when there was no basis for doing so.

## VI.

 Cartwright claims that the district court erred by refusing to give his requested jury instructions with regard to the presumption of innocence and the terms "knowingly" and "willfully." We review the district court's failure to give requested instructions for abuse of discretion. *United States v. Rochester,* 898 F.2d 971, 978 (5th Cir.1990). We will reverse only if the requested instruction (1) was substantially correct, (2) was not substantially covered in the charge actually delivered to the jury, and (3) concerned an important point in the trial so that failure to give it seriously impaired the defendant's ability to present a given defense effectively. *United States v. Chambers,* 922 F.2d 228, 241 (5th Cir.1991).

### A.

 Cartwright requested that the court instruct the jury as to the presumption of innocence as follows:

1. *Presumption of innocence:* The Defendants are presumed by the law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of a Defendant not to testify.

The district court chose to give the following instructions:

3. Remember, the defendant is innocent, and he remains innocent unless the government proves its charges. All reasonable doubts benefit the defendant, and he must prove nothing. For the defendant to be entitled to a verdict of not guilty, all that you need to decide is that the government failed to prove the charge beyond a reasonable doubt. The presumption of innocence legal rule that binds you, requires a verdict of not guilty if the government has not actually proved its charge beyond a reasonable doubt.

. . . .

18. A defendant's not having testified must not be considered by you in any way or even be discussed in your deliberations.

19. The defendant is presumed innocent. The law does not require the defendant to prove his innocence or to produce any evidence at all.

While the instruction given by the court was not as plain as Cartwright's suggested instruction, it was not so confusing as to constitute error.

 Cartwright contends that the omission of the phrase "no inference whatever may be drawn from the election of a Defendant not to testify" made the instruction impermissibly vague. The contention is meritless. The instruction that "[a] defendant's not having testified must not be considered by you in any way or even be discussed" was substantially correct. The injunction not to consider in "any way" Cartwright's decision not to testify includes not drawing inferences from the fact. Thus, the court's instruction substantially covered the points raised in Cartwright's requested instruction.

### B.

Cartwright claims that the district court erred by failing to give his requested instruction for the scienter requirement that he acted "willfully." He requested that the jury be given the following instruction:

3. *Willfully:* An act is done "willfully" if done voluntarily and intentionally and with the specific intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

Instead, the court gave the following instruction:

20(b). "Willfully" means an act was done with a conscious purpose to violate the law.

Cartwright objected to the charge.

 The court's charge was substantially correct and adequately instructed the jury on the law. Thus, it could not have confused the jury. The government contends that no willfulness instruction was even required because it was not an element of the crime. *United States v. Arditti,* 955 F.2d 331, 340–41 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992). We need not reach this issue, however, as the charge was substantially correct, and Cartwright does not suggest how the given charge misled the jury.

## C.

Cartwright contends that the district court erred in failing to give his requested jury instruction for the scienter requirement that he acted "knowingly." He requested the following instruction:

2. *Knowingly:* An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake or accident or other innocent reason. With respect to the offense charged in this case, specific intent must be proved beyond a reasonable doubt before there can be a conviction.

The court rejected Cartwright's requested instruction. He objected, contending that the court's instruction did not give the jury adequate guidance as to his criminal intent. He claims (1) that the jury must be told it cannot convict because of mistake or accident and (2) that the offenses charged are specific intent offenses.

### 1.

■ The district court adequately instructed the jury that it could not convict based upon mistake or accident. The court directed that "[k]nowingly means that an act was done voluntarily and not because of mistake or accident or other innocent reason." Thus, Cartwright's concern is invalid.

### 2.

■ The court also instructed that the crimes were specific intent offenses. The specific intent requirement for Cartwright's crimes is knowledge that the substance possessed is a controlled substance. *See United States v. Restrepo–Granda,* 575 F.2d 524, 527 (5th Cir.), *cert. denied,* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978). The jury was so advised:

The government is not required to show that the defendant knew that the substance involved was crack or cocaine. It is sufficient if the evidence establishes beyond a reasonable doubt that the defendant aided in the possession with the intent to distribute [conspired to possess with intent to distribute], a controlled substance, which turned out to contain cocaine.

This instruction properly instructed that specific intent requires the government to show only that the defendant knew that the substance was a controlled substance.

### VII.

■ Cartwright appeals the district court's determination that his offense involved 1.5 kilograms or more of a mixture containing cocaine base. He claims that because the drugs were not 100% pure, the weight should be reduced to take account of the purity. We review the district court's calculation as to the amount of drugs for clear error. *United States v. Mitchell,* 964 F.2d 454, 457 (5th Cir.1992).

This argument has no merit. The drug quantity table states that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c). The plain language indicates that the "entire weight of [the] mixture" containing the drugs, not the weight of the drugs alone, is the relevant consideration for sentencing.

In *Chapman v. United States,* —— U.S. ——, ——–——, 111 S.Ct. 1919, 1924–25, 114 L.Ed.2d 524 (1991), the Court noted that in the Anti–Drug Abuse Act of 1986, Congress adopted a "market-oriented" approach to punishing drug trafficking in drugs such as LSD, heroin, and cocaine. Under that approach, "the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Id.* at ——, 111 S.Ct. at 1925. Congress "intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." *Id.* By punishing retail traffickers who sell "cut" drugs, even though they deal in smaller quantities of the pure drug, Congress hoped

to deter those who keep the street markets going. *Id.*

We previously have held that methamphetamine sentencing shall be based upon the total weight of a mixture without regard to its purity. *See United States v. Sherrod,* 964 F.2d 1501, 1509–10 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Cartwright offers no reason to deviate from this rule for cocaine mixtures and provides no authority indicating that the sentencing guidelines specify a different rule for cocaine. The district court's determination that the offense involved 1.5 kilograms or more of a substance containing cocaine base is affirmed.

## VIII.

Cartwright claims that the district court erred in not giving him a two-point reduction under the sentencing guidelines for his confession that the "dope" was his. He also claims that the court's failure to reduce his sentence in response to his confession violated his due process rights. Neither ground has merit.

## A.

Under U.S.S.G. § 3E1.1(a), a convicted defendant may receive a two-point reduction in his offense level where he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...."[2] Section 3E1.1(b) requires that the acceptance of responsibility be given consideration without regard to whether the conviction is based upon a plea of guilty or a finding of guilt by the court or jury.

 We have not ultimately defined what standard applies in reviewing a district court's refusal to credit acceptance of responsibility. We have applied varying standards: (1) clearly erroneous, *United States v. Hardeman,* 933 F.2d 278, 283 (5th Cir.1991);

(2) without foundation, *United States v. Garcia,* 917 F.2d 1370, 1377 (5th Cir.1990); and (3) great deference, *United States v. Watson,* 988 F.2d 544, 551 (5th Cir.1993), *petition for cert. filed* (July 29, 1993). There appears to be no practical difference between the three standards. *See United States v. Brigman,* 953 F.2d 906, 909 (5th Cir.), *cert. denied,* 113 S.Ct. 49 (1992). Regardless of which formula is invoked, Cartwright fails to show that the district court erred in refusing to award credit for acceptance of responsibility.

Application note 2 to U.S.S.G. § 3E1.1 specifies that the credit does not "apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."[3] *Garcia,* 917 F.2d at 1378. Having required the government to prove its case despite his confession, Cartwright cannot now demand that he be awarded credit for confessing his responsibility for committing the crime.

Indeed, the district court found that Cartwright unequivocally had not accepted responsibility. He contested every aspect of the trial, tried to manipulate the system throughout, showed no sign of accepting the justification for criminal laws, and did not express remorse even after conviction. Given these circumstances, the district court did not err in denying Cartwright credit for acceptance of responsibility.

## B.

 Cartwright also contends that using his confession against him without awarding credit for acceptance of responsibility violates principles of fundamental fairness and, hence, his due process rights. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). He says that he received the worst of all worlds, because

---

**2.** This was the effective language at the time of Cartwright's sentencing. Section 3E1.1(a) was amended effective November 1, 1992, and now reads, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. Amend. No. 459.

**3.** Under application note 2, a defendant who goes to trial to preserve issues that do not relate to factual guilt, such as to challenge the constitutionality of a statute or the applicability of a statute to his facts, remains eligible for acceptance of responsibility credit.

his confession subjected him to a heavier sentence yet gave him no reduction for acceptance of responsibility. This claim has no merit.

The government did not force Cartwright to confess or make a deal to obtain his confession. Under these circumstances, a confession is like any other evidence the court can consider at sentencing. If confessing mandated an award of acceptance of responsibility credit, a defendant could confess in order to mitigate his sentence, even where the prosecution had no need for it. That would thwart the will of Congress in establishing sentencing ranges based upon behavior.

Moreover, Cartwright made a strategic decision to confess in order to lessen punishment for a co-defendant. Automatically granting acceptance of responsibility credit for such confessions would encourage a defendant to confess falsely, in order to mitigate his co-defendant's sentence in addition to his own.

The judgment of the district court is AFFIRMED in all respects.