IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-60147
Summary Calendar
_____

DEIDRE GLORIOSO,

Plaintiff-Appellant,

v.

MISSISSIPPI DEPARTMENT OF CORRECTIONS; STEVE PUCKETT,
Individually and as Commissioner of the Mississippi
Department of Corrections; ALTON ELLIS, Individually and as
Personnel Officer of the Mississippi Department of
Corrections; NICKIE SIMMONS, Individually and as Satellite
Director of the Harrison County Community Work Center; DON
JOHNSON, Individually and as Head of Security at the
Harrison County Community Work Center; JOHN DOES, 1-5,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:97-CV-3810-RG)
_____

August 20, 1999

Before KING, Chief Judge, HIGGINBOTHAM and STEWART, Circuit
Judges.

PER CURIAM:[*]

Plaintiff-appellant Deidre Glorioso appeals the district

court's grant of summary judgment on her Title VII retaliation

claim in favor of defendants-appellees the Mississippi Department

of Corrections, Steve Puckett, Alton Ellis, Nickie Simmons, Don

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Johnson, and John Does 1-5.  We reverse and remand for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events giving rise to this lawsuit, plaintiff-appellant Deidre Glorioso was employed by defendant-appellee the Mississippi Department of Corrections (MDOC) as a clerk typist senior[1] at the Harrison County Community Work Center (the Center) in Gulfport, Mississippi.  Glorioso began working at the Center in December 1994.  Shortly thereafter, defendant-appellee Nickie Simmons, the Center's director and Glorioso's immediate supervisor,[2] attempted to procure a raise for her but failed because Glorioso did not meet the MDOC's requirements therefor.  In his March and June 1995 employee performance reports, Simmons rated Glorioso "highly successful" and "fully successful" in the areas in which he evaluated her work.

On October 19, 1995, Glorioso became involved in an altercation with defendant-appellee Don Johnson, the Center's head of security.  According to Glorioso,

> I was in my office, and I don't know if you've been out to the prison or not, but it's quiet like it is right now.  It was about 2:00 in the afternoon, I think.  It was very unusually quiet.  It's usually turmoil. And I was sitting at my desk, and some new inmates had come in.  And I had, I remember, four files just like this on my desk because I was taking information out of them to put on records for Nickie and the rest of them.  I used to put things like their

---

[1]  It appears from the record that "clerk typist senior" was Glorioso's official job title.

[2]  Simmons's duties included making recommendations to hire and fire Center employees.  In December 1994, he recommended that the MDOC hire Glorioso.

tatoos [sic], their date of birth, information Nickie had asked me to do. And when I was doing it I noticed one of them was like missing. So I said to myself very softly like I'm saying right now, I wonder what I did with that other file, which I often did. That's all I said. And before you know it, Sergeant Johnson comes flying out of his office from this way and stands in front of me and starts screaming at me. He said, You will get that file when I'm good and ready to give it to you. And I looked at him like I'm looking at you right now in disbelief. And I said, What did you say. And he said it again. He said, God damn, you heard me. And I was like in shock. And I said, you know, I really don't like the way you speak to me. He said, I don't give a damn whether you like it or not. He said, You're a bitch. And I went, Excuse me. He said, You've been bitching all the time. You're always a bitch or--three times he said the bitch word in that sort of order, and he walked into his office.

Glorioso verbally reported these events to Simmons, telling him that Bob Bellman, a Center case worker, and David Randle, an inmate, might have heard Johnson call her a "bitch."[3] Simmons questioned Johnson and Bellman, but not Randle, about the incident. Johnson denied calling Glorioso a "bitch" but admitted saying that she was always "bitching." Bellman claimed that he had not heard Johnson's remarks. Simmons then told Glorioso "to try to get along with Johnson."

On October 31, 1995, however, Glorioso filed a written grievance with Simmons. Specifically, Glorioso stated:

On October 19, 1995, Sgt. Don Johnson committed unwarranted abusive language to me. In anger and without hesitation he used the "bitch" term toward me several times. This loud abusive style was in the administration office, where in attendance were inmate David Randle, Case Manager, Bob Bellman and Captain Nickie Simmons all within hearing distance.

_____

[3] The parties disagree as to when Glorioso first told Simmons of the Johnson incident. Glorioso testified in her deposition that she reported it to Simmons on October 19, 1995, but Simmons claims that she did not do so until October 27, 1995.

3

The next day, November 1, 1995, Simmons dismissed Glorioso's grievance as invalid because she was a probationary employee. On November 6, 1995, Simmons recommended in a written memorandum to Ray Hinton, the MDOC's regional director, that Glorioso be terminated. Simmons stated that although Glorioso had "done an excellent job performing her clerk typist duties," she had "jumped the chain of command" by calling the state personnel office in December 1994 to ask why she did not qualify for a pay raise. In addition, Simmons noted that "Mrs. Glorioso's attitude toward Sgt. Johnson has not been positive since her first day at work." He then described how she had complained both orally and in writing that Johnson had "verbally abused her." Finally, Simmons asserted: "It is my belief that Mrs. Glorioso will never make an attempt to get along with Sgt. Johnson if she remains employed with the Mississippi Department of Corrections. I respectfully request she be terminated immediately for her actions since she is a probationary employee." Hinton agreed with Simmons's recommendation and forwarded it to Christopher Epps, the MDOC's deputy commissioner, for his review. Epps also recommended that Glorioso be terminated and forwarded Simmons's memorandum and his and Hinton's recommendations to defendant-appellee Steve Puckett, commissioner of the MDOC, for a final decision. On November 14, 1995, Puckett notified Glorioso in writing that her employment was terminated effective November 17, 1995.

4

Glorioso filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that she had been terminated in retaliation for filing a grievance against Johnson. After receiving a right-to-sue letter, Glorioso filed suit in the United States District Court for the Southern District of Mississippi alleging claims under 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), 42 U.S.C. § 1983, and 42 U.S.C. § 1985 against the MDOC, Puckett, Alton Ellis, MDOC's personnel officer, Simmons, Johnson, and five John Does (collectively, the defendants). The parties consented to trial by a magistrate judge. Following discovery, the defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, and the magistrate judge granted summary judgment in their favor on all of Glorioso's claims. Glorioso appealed.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. See United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998). After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on those issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-movant. See Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 214-15 (5th Cir. 1998). Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. DISCUSSION

On appeal, Glorioso challenges only the lower court's grant of summary judgment on her claim that, in violation of Title VII, she was discharged in retaliation for protesting Johnson's sex discrimination and sexual harassment. The magistrate judge concluded that Glorioso failed to establish a prima facie retaliation case because she showed neither that she was engaged in activity protected by Title VII nor that a causal link existed between such activity and her termination. Moreover, the magistrate judge found, "even assuming that Glorioso could establish a prima facie case of unlawful retaliation, the Defendants can rebut the prima facie case with a legitimate, non-retaliatory reason for terminating her. . . . This Court cannot conclude that but for Glorioso's filing of the grievance, the Defendants would not have terminated her. Therefore, the Defendants' Motion for Summary Judgment should be granted."

We begin with first principles. A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. See Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996); Long v. Eastfield College, 88

6

F.3d 300, 304 (5th Cir. 1996).  An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); see Grimes, 102 F.3d at 140; Long, 88 F.3d at 304.  The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a good faith, reasonable belief that the practices she opposed were unlawful.  See Wilson v. UT Health Ctr., 973 F.2d 1263, 1267 (5th Cir. 1992); Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981).

We previously have held that the burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), is also applicable to Title VII unlawful retaliation cases.  See Grimes, 102 F.3d at 140-41; Long, 88 F.3d at 304.  Therefore, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  See Grimes, 102 F.3d at 140; Long, 88 F.3d at 304-05.  If the defendant introduces evidence which, if believed, would permit the conclusion that the challenged employment action was nondiscriminatory, the inference of discrimination raised by the plaintiff's prima facie case disappears, and the focus shifts to the ultimate question of whether the defendant unlawfully

7

retaliated against the plaintiff.  See Grimes, 102 F.3d at 140;
Long, 88 F.3d at 305.[4]

With these principles in mind, we turn to the case at hand.
As we noted above, the first element of a prima facie case for
unlawful retaliation is that the plaintiff engage in activity
protected by Title VII.  Glorioso contends that she filed a
grievance voicing her opposition to Johnson's sex discrimination
and sexual harassment.  The defendants respond that "[t]here is
no evidence that when Glorioso complained to Defendant Simmons
regarding her altercation with Johnson that she was complaining
of anything other than general harassment not based on gender.
Her written grievance makes no suggestion that Johnson's actions
were sexual in nature, or that she considered the incident to be
sexual harassment."  The magistrate judge noted that Glorioso
testified in her deposition that she knew when Johnson called her
a "bitch" that she had been sexually harassed, but concluded that
"[t]he Court does not agree with Glorioso's contention.  In her
grievance, Glorioso did not claim that she had been sexually

_____

    [4]  We have noted that while, at first glance, the ultimate
issue in an unlawful retaliation case--whether the defendant
discriminated against the plaintiff because the plaintiff engaged
in conduct protected by Title VII--seems identical to the third
element of the plaintiff's prima facie case--whether a causal
link exists between the adverse employment action and the
protected activity--the standards of proof applicable to these
questions differ significantly.  See Long, 88 F.3d at 305 n.4.
Under Title VII, we explained, a plaintiff "need not prove that
her protected activity was the sole factor motivating her
employer's challenged decision in order to establish the causal
link element of a prima facie unlawful retaliation case," but is
required to show that the protected activity was a "but for"
cause of the adverse employment action in order ultimately to
prevail.  Id. (internal quotation marks omitted).

8

harassed, or that Johnson's conduct was in any way directed at her because of her sex. For this reason, the Court is of the opinion that Glorioso did not have a reasonable belief that Johnson's conduct was unlawful, and therefore, Glorioso cannot prove the first element of her prima facie case." This ruling was error.

When deciding a motion for summary judgment, a court must consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-movant, in this case Glorioso. See Doe, 153 F.3d at 214-15. Although Glorioso's written grievance made no explicit reference to sex discrimination or sexual harassment, she stated unequivocally in her deposition, "I knew the moment he called me a bitch that I was sexually harassed." In addition, she testified that she "knew it was some sort of sexual harassment" and that she believed that Johnson's calling her a "bitch" was "[s]exual discrimination maybe, but not discrimination from my job."[5] This evidence is sufficient to raise a genuine issue of fact as to whether Glorioso held a good faith, reasonable belief that the practices she opposed were unlawful. See Wilson, 973 F.2d at 1267; Payne, 654 F.2d at 1140.[6]

---

[5] Glorioso's deposition testimony distinguishes her case from Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999), in which we held that the plaintiff's complaint that her supervisor "was making comments about her personal life" was not protected activity under Title VII because the plaintiff herself admitted that she did not report any sexual harassment in that complaint.

[6] We note that neither the magistrate judge nor the defendants appear to dispute Glorioso's contention in her brief

9

Next, we turn to the magistrate judge's conclusion that "[e]ven assuming that Glorioso could meet the first element of her prima facie case, she is unable to meet the third element, which is that a causal link existed between the protected activity and the adverse employment action." The summary judgment evidence establishes that Glorioso filed a grievance with Simmons against Johnson and that Simmons recommended Johnson's termination within a week after he received the grievance. In addition, Simmons explained in a memorandum recommending Glorioso's termination that Glorioso's "attitude toward Sgt. Johnson has not been positive since her first day of work," cited her October 1995 grievance as the only example of this allegedly negative attitude, and requested that "she be terminated immediately for her actions." This evidence is sufficient to raise a genuine issue of fact as to whether there was a causal link between Glorioso's grievance and Simmons's decision to recommend her termination. Cf. Long, 88 F.3d at 306 ("The summary judgment evidence establishes that Long and Reavis filed complaints against Clark and Kelley, that Clark and Kelley

_____

that her belief in the unlawfulness of the practices she opposed was objectively reasonable. Rather, the magistrate judge found that there is no genuine issue of fact as to whether Glorioso in fact believed that Johnson's actions violated Title VII. While the defendants note that "the use of the word 'bitch' towards a female employee is not sexual harassment per se," they ground their argument on the contention that Glorioso did not actually believe that Johnson's behavior violated Title VII, not that such a belief would be objectively unreasonable. We therefore express no opinion as to whether a woman could reasonably believe that being called a "bitch" under the circumstances of this case was a practice unlawful under Title VII.

10

had knowledge of these complaints, and that Clark and Kelley recommended that Long and Reavis be terminated after learning of these complaints. Accordingly, we have no trouble finding sufficient evidence, for prima facie case purposes, to establish a causal link between Long and Reavis's protected activities and Clark and Kelley's recommendations.") (citation omitted).

As in Long, however, we must consider whether the fact that Simmons did not himself terminate Glorioso but instead recommended her termination to Hinton, who made the same recommendation to Epps, who in turn recommended termination to Puckett, who made the final decision to fire Glorioso, severs the causal link between Simmons's allegedly retaliatory recommendation and Glorioso's final termination. In Long, the plaintiffs were fired by a college president on the recommendations of their immediate supervisors. See id. at 306. We held that if the college president based his decisions on his own independent investigation, the causal link between the supervisors' allegedly retaliatory intent and the plaintiffs' terminations would be broken. See id. at 307. If, on the other hand, the president did not conduct his own investigation, and instead merely "rubber stamped" the supervisors' recommendations, the causal link between the plaintiffs' protected activities and their subsequent terminations would remain intact. See id. The degree to which Hinton's and Epps's recommendations and Puckett's ultimate decision were based on their own independent investigations is, of course, a question of fact. See id.

11

Viewing the evidence in the light most favorable to Glorioso, we must conclude that Hinton, Epps, and Puckett each merely "rubber stamped" Simmons's recommendation. Hinton testified at his deposition that he had forwarded Simmons's memorandum to Epps "with a recommendation of termination based on Mr. Simmons's request." Epps stated that he had never refused to approve a recommendation for termination. Puckett averred that he "probably would have asked" Epps about Simmons's recommendation that Glorioso be terminated but could not remember whether he in fact had done so. None of the three officials who reviewed Simmons's recommendation testified that he had conducted an independent investigation of Glorioso's case. Accordingly, for purposes of this appeal, we hold that Glorioso has presented sufficient evidence to establish a causal link between her protected activities and her termination.

Finally, we address the magistrate judge's conclusion that "even assuming that Glorioso could establish a prima facie case of unlawful retaliation, the Defendants can rebut the prima facie case with a legitimate, non-retaliatory reason for terminating her." The defendants offered the following explanations for Glorioso's termination: She was a probationary employee; she had on one occasion jumped the chain of command; she sometimes refused to type reports; and she did not get along with her coworkers. These explanations, if believed, would support a finding that the MDOC's termination of Glorioso was non-retaliatory. Because the defendants have satisfied their burden

12

to articulate a legitimate, non-retaliatory reason for Glorioso's termination, <u>McDonnell Douglas</u>'s burden-shifting framework drops from the case.  See <u>Long</u>, 88 F.3d at 308 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993)).

We are now left with the ultimate question: whether the defendants unlawfully retaliated against Glorioso.  As we noted earlier, a plaintiff must show that the adverse employment action would not have occurred "but for" the protected activity in order to prove unlawful retaliation.  See <u>id.</u>  To defeat a motion for summary judgment, a Title VII plaintiff, like plaintiffs in any other civil case, must show that there is a "conflict in substantial evidence" on this ultimate issue.  <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (internal quotation marks omitted).  Evidence is "substantial" if it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."  <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).  We must therefore determine whether reasonable and fair-minded persons could conclude from the summary judgment evidence that the MDOC would not have terminated Glorioso "but for" her activity protected by Title VII.

In response to the defendants' proffered explanations for her termination, Glorioso presented evidence tending to show that the but-for cause of her termination was retaliatory animus, not the reasons the defendants gave.  First, she showed that Simmons rated her "fully successful" or "highly successful" in all

13

evaluation categories in March and June 1995. Neither evaluation noted that Glorioso had any difficulty getting along with her coworkers or refused to perform her duties as a clerk typist senior. Second, she produced evidence that in response to inquiries from the EEOC and the Mississippi Employment Security Commission about Glorioso's termination, the MDOC had explained, not that she had jumped the chain of command, refused to carry out assigned tasks, or had difficulty getting along with her colleagues, but simply that she was a probationary employee subject to termination without cause. Third, with respect to Simmons's claim that he recommended Glorioso's termination in part because she jumped the chain of command, Glorioso produced evidence that the incident in question occurred within the first six weeks of her MDOC employment and that it apparently did not affect subsequent performance evaluations. Fourth, Simmons's memorandum to Hinton describes in detail Glorioso's altercation with Johnson, including her grievance, and then recommends that "she be terminated immediately for her actions." In addition, Simmons admitted in his deposition that he told Glorioso that there would be "problems" if she filed a grievance:

> Q. [by counsel] Do you deny that it would caused some problems if she filed a grievance?
>
> A. No. I don't deny that. What I said was, I said, Dee, this is a very small office. We don't have that many people here. I said, Are you sure this is what you want to do as far as filing a grievance. She said, Yes. I said, Okay.

Finally, Simmons stated that the "only reason" he mentioned Johnson in the termination memorandum as an example of the

14

individuals with whom Glorioso did not get along was "because she wanted to file a grievance." We find that a reasonable factfinder could conclude based on this evidence that Glorioso would not have been terminated but for the fact that she engaged in activity protected under Title VII. The district court erred in granting summary judgment in favor of the defendants.

## IV.   CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.