United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 26, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-60205
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY TERRELL MOORE; CURTIS E. MOORE,

Defendants-Appellants.

--------------------
Appeals from the United States District Court
for the Northern District of Mississippi
(1:03-CR-34-3)
--------------------

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:*

Defendants-Appellants Curtis Moore and Jimmy Moore appeal their convictions and sentences. We affirm.

I.

Curtis Moore ("Curtis")

The jury found Curtis guilty of distributing in excess of 5 grams of a substance containing cocaine base (crack cocaine) (Count 1), distributing in excess of 50 grams of a substance containing crack cocaine (Count 2), distributing in excess of 5 grams of a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

substance containing crack cocaine (Count 3) and an unspecified amount of a substance containing cocaine hydrochloride (powder cocaine) (Count 4). The district court sentenced Curtis to a 151-month term of imprisonment and five-year term of supervised release on each count of conviction, to be served concurrently.

Curtis argues that the evidence was insufficient to support his convictions on Counts 3 and 4 because there was no evidence regarding essential elements of those offenses, viz., the specific amounts of the controlled substances charged in those counts. The government sought an enhanced penalty on Count 3 pursuant to 21 U.S.C. § 841 (b)(1)(B), so the drug quantity to support this enhancement had to be charged and proved to the jury beyond a reasonable doubt. United States v. Doggett, 230 F.3d 160, 164-65 (5th Cir. 2000). The drug quantity for Count 3 was charged in the indictment; the jury was instructed that it had to find that the mixture or substance containing crack cocaine weighed in excess of 5 grams; and DEA Forensic Chemist Enrique Pinero testified that the substance in government exhibit 9 was a mixture of both cocaine base and cocaine hydrochloride and that the mixture and substance weighed 85.4 grams. The weight of a controlled substance refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. United States v. Cartwright, 6 F.3d 294, 303 (5th Cir. 1993). Based on this evidence, a reasonable juror could find beyond a reasonable doubt that the mixture and substance Curtis distributed or possessed with

intent to distribute weighed "in excess of 5 grams" and "contain[ed] a detectable amount of cocaine base." See id. Thus, the evidence is sufficient to support Curtis's conviction on Count 3. The government did not seek an enhanced penalty on Count 4, so the drug quantity did not need to be charged or proved to the jury. See Doggett, 230 F.3d at 165.

Curtis likewise contends that there was insufficient evidence to establish a two level enhancement under U.S.S.G. § 3B1.1(c) for his role as a leader or manager of at least one other person. We review the district court's interpretation and application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Angeles-Mendoza, ___ F.3d ___, No. 04-50118, 2005 WL ___ , slip op. at 3 (5th Cir. Apr. 26, 2005). The evidence shows that on the occasions charged in Count 2, 3, and 4 of the indictment, Curtis negotiated the sale of drugs to confidential informant Willie Ewell and obtained the drugs, which either he or Armond Moore ("Armond") delivered to Ewell. Curtis directed co-defendant Armond to deliver drugs to Ewell, to retrieve "buy money" from Ewell, to count it, and to give the money to Curtis. The day after the transaction alleged in Count 5, Curtis had the "buy money" from that transaction. The record shows that the district court's finding that Curtis was the leader in the drug trafficking crimes and asserted control or influence over at least one participant is not clearly erroneous. See U.S.S.G. § 3B1.1(c);

3

U.S.S.G. § 3B1.1, comment (n. 1); United States v. Jobe, 101 F.3d 1046, 1065 (5th Cir. 1996).

Citing Blakely v. Washington, 124 S. Ct. 2531 (2004), Curtis contends — for the first time on appeal — that certain sentencing guidelines increases violated his Sixth Amendment rights because the factors on which those increases were based were neither found by the jury beyond a reasonable doubt nor admitted by him. To the extent that Curtis's sentence was enhanced based on a quantity of drugs and an offense role found by the district court that went beyond the facts found by the jury, there was obvious error. United States v. Mares, 402 F.3d 511, 520-21 (5th Cir. 2005), petition for cert. filed (U.S. Mar. 31, 2005) (No. 04-9517). Curtis has not, however, "demonstrated that the sentencing judge — sentencing under an advisory scheme rather than a mandatory one — would have reached a significantly different result." Id. at 521. Thus, he has not shown that the error affected his substantial rights.

## II.

### Jimmy Terrell Moore ("Jimmy")

The jury found Jimmy guilty of aiding and abetting the distribution of in excess of 50 grams of a substance containing crack cocaine (Count 5). The government notified Jimmy of its intent to seek an enhanced sentenced pursuant to 21 U.S.C. § 841(b)(1)(A) based on his previous felony drug convictions. The

district court sentenced Jimmy to life imprisonment and a 10-year term of supervised release.

Jimmy argues that his mere presence at the crime scene, possible knowledge that a drug transaction was taking place, and his role as a mere lookout are insufficient to sustain his conviction. This argument is unavailing. The evidence shows that Jimmy was an active participant in the drug distribution charged. He participated in the venture on February 26, 2003, by acquiring and negotiating the sale of four ounces of crack cocaine to Ewell for $3,500. He wanted to see the money and had Ewell count it in front of him. Jimmy was seen going in and out of the house where the money and drugs were exchanged and was seen leaving the house with Van Jones. Jimmy told Ewell to deal with "Van," and he entered the house with Ewell and Van Jones for the purposes of weighing and transferring the drugs and money. Jimmy stood at the door inside the house as a lookout. It can reasonably be inferred that he stood watch to ensure that these activities would not be interrupted or detected. Thus, Jimmy sought to make the venture successful. The substance transferred that day contained crack cocaine and had a net weight of 106.1 grams. The evidence was sufficient for the jury to find beyond a reasonable doubt that Jimmy aided and abetted the distribution of in excess of 50 grams of cocaine base.

Jimmy also argues that the district court erred in admitting, over his hearsay objection, the tape of the drug transaction on

which Van Jones's voice is heard as the testimony of a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence. We will not address whether the district court abused its discretion by admitting the statements because a review of the transcript shows that their admission was harmless beyond a reasonable doubt. See Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001). As this is non-testimonial hearsay, the Sixth Amendment is not implicated. See Crawford v. Washington, 541 U.S. 36, 68 (2004). Before the tape was played, the jury had already heard Ewell's testimony that he negotiated the drug deal with Jimmy, that Jimmy told him to complete the deal with Van, and that Jimmy stood guard while Ewell and Van weighed the drugs, counted the money, and exchanged each. The tape of Van's statements is largely inaudible, and the statements were not repetitive of Ewell's testimony, did not contradict that testimony, and were not important in the government's case against Jimmy. There is no reasonable possibility that Van's statements on the tape had a "substantial impact" on the jury's verdict. Any error in the admission of those statements is harmless. See United States v. Williams, 957 F.2d 1238, 1242 (5th Cir. 1992); United States v. Evans, 950 F.2d 187, 191 (5th Cir. 1991).

Jimmy also contends that (1) the statute mandating enhancement of his sentence to life imprisonment, 21 U.S.C. § 841(b)(1), is unconstitutional because the sentence is grossly disproportionate to the circumstances of his case in violation of the Eighth

6

Amendment, and (2) the case should be remanded because the district court mistakenly believed that it had no authority to consider whether the sentence was grossly disproportionate in light of mitigating factors. Measured against the Rummel v. Estelle, 445 U.S. 263 (1980), benchmark, Jimmy's sentence is not grossly disproportionate. See United States v. Gonzales, 121 F.3d at 944, 928 (5th Cir. 1997). In Rummel, the Supreme Court upheld a life sentence following a conviction for obtaining $120.75 by false pretenses, pursuant to a "recidivist statute" providing a mandatory sentence of life imprisonment for any defendant convicted of three felonies. The Court so ruled after concluding that the sentence was not so grossly disproportionate as to offend the Eighth Amendment. Rummel, 445 U.S. at 284-85. Jimmy's prior convictions are more serious than the crimes that resulted in a life sentence for the defendant in Rummel. Although Jimmy, unlike the defendant in Rummel, is not eligible for parole, this difference from Rummel is directly related to the severity of Jimmy's prior convictions and the severity of the instant offense, viz., distribution of more than 100 grams of crack cocaine. Thus, Jimmy has not made a threshold showing that his sentence is grossly disproportionate. See also Harmelin v. Michigan, 501 U.S. 957, 965-66 (1991) (upholding finding life sentence without possibility for parole against a defendant convicted of possessing more than 650 grams of cocaine not grossly disproportionate). Neither has he shown that the district court had discretion to apply the proportionality test

7

set forth in <u>Solem v. Helm</u>, 463 U.S. 277, 292 (1983), or to consider any mitigating factors before imposing the statutory mandatory sentence. Accordingly, Jimmy has not shown that the district court's belief that it lacked such discretion is error, plain or otherwise.

In sum, the convictions and sentences of both Defendants-Appellants are, in all respects,

AFFIRMED.